41 F.3d 1518
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Edward C. WONDERLY, Petitioner,
v.
DEPARTMENT OF the NAVY, Respondent.
 No. 94-3373.
 United States Court of Appeals, Federal Circuit.
 Nov. 1, 1994.
 
 Before ARCHER, Chief Judge, RICH and NEWMAN, Circuit Judges.
 ARCHER, Chief Judge.
 
 
 1
 Edward C. Wonderly petitions for judicial review of the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. SL-0752-89-0461-C-2, which denied Wonderly's request for enforcement of a settlement agreement allegedly breached by the Department of the Navy (Navy). The March 24, 1994 initial decision of the administrative judge (AJ) became the final decision of the MSPB on April 28, 1994 when the MSPB denied Wonderly's petition for review. We reverse and remand.
 
 DISCUSSION
 
 2
 On July 14, 1989, the Navy removed Wonderly from his civilian position with the United States Marine Corps as a Supervisory Computer Programmer Analyst. Wonderly subsequently filed a timely appeal with the MSPB challenging the removal and seeking reinstatement. Before a hearing on the appeal, the parties entered into a settlement agreement on October 2, 1989 resolving the dispute. Wonderly has now petitioned the MSPB for enforcement of certain provisions of the settlement agreement. Specifically, Wonderly contends that the Navy failed to comply with three requirements: (1) that the Navy breached Section B and C of the settlement agreement, which required that the Navy not communicate derogatory information about Wonderly to third parties, by failure to provide employment references in conformity with the agreement; (2) that the Navy breached Section B, which provided that Wonderly would be accorded a record with a "clean slate," by failing to purge Wonderly's personnel file of all documents pertaining to the settlement; and (3) that the Navy breached Section C, which required that the Navy provide Wonderly with a "fully successful" supervisory appraisal, by failing to place the appraisal in Wonderly's personnel file. Although the MSPB found that the Navy had breached Section B, the board deemed the breach as "merely technical" and harmless. The board found that the Navy had not breached any [illegible copy] provisions cited by Wonderly and thus denied his request for enforcement of the agreement.
 
 
 3
 Our standard of review requires that we affirm a decision of the MSPB unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988). This court reviews the construction of a settlement agreement, as it does the construction of any contract, as a question of law subject to de novo review. Perry v. Department of Army, 992 F.2d 1575, 1578 (Fed.Cir.1993).
 
 
 4
 Wonderly asserts that Section B and C of the settlement agreement established specific conditions for the provision of employment references to prospective employers. The relevant portion of Section B states that "no agency personnel will communicate to any third parties any ... derogatory information." Settlement Agreement Sec. B, at 1 (October 2, 1989).
 
 
 5
 (B) Appellant's personnel files and records will be purged of this appeal, or this settlement agreement and no Agency personnel will communicate to any third parties any contrary, conflicting, or otherwise derogatory information, it being the intention of the parties that the Appellant's records will be a "clean slate." The Agency affirmatively pledges to take no action and to make no statements that would hinder Appellant's ability to effectively compete for private employment and to advise its personnel of this obligation.
 
 
 6
 Id. (emphasis added).
 
 
 7
 Section C requires that Wonderly be given a "fully successful" performance rating.
 
 
 8
 (C) At the time this settlement is accomplished, the Agency will give to Appellant a recent supervisory appraisal of performance which reflects a "fully successful" rating in each critical element. Appellant will accept these ratings without challenge.
 
 
 9
 Id. Sec. C, at 1-2 (emphasis added).
 
 
 10
 To evidence the Navy's breach of these sections, Wonderly claims that his former supervisor and coworkers refused to respond to inquiries from prospective employers, instead referring them to the agency's personnel office. Wonderly contends that the refusal of these persons to respond to inquiries prejudiced his efforts to gain new employment. The Board found that the agency had instructed Wonderly's former supervisor and coworkers to refer all questions to the personnel office to ensure that the agency complied with the terms of the settlement agreement. We agree that this instruction represented, as stated by the Board, a "prudent method of ensuring agency compliance." Once prospective employers contacted the Navy's personnel office, the Board found that the office could properly disclose the reason for his removal as unsatisfactory performance.
 
 
 11
 Wonderly also claims that Section B required that the agency purge Wonderly's personnel file of all documents pertaining to the settlement. The Board found that the agency failed to do so but that the failure was harmless. The Board made this finding based on Section A of the settlement agreement, which states:
 
 
 12
 (A) Appellant will be removed for unsatisfactory performance effective December 31, 1989 by the completion of an SF-50, prepared by the Agency. Until such time as Appellant's termination is effective, Appellant will be carried in a leave without pay status. Agency agrees to cooperate with Appellant in order to qualify him for discontinued service retirement.
 
 
 13
 Id. Sec. A, at 1. The Board reasoned that the settlement agreement provides for the removal of Wonderly for unsatisfactory performance and the completion of an SF-50 (Notification of Personnel Action), a document that describes the reason for the removal. But, because the agreement makes no explicit mention of purging the SF-50 from Wonderly's personnel file, the Board concluded that the agency could retain that document within the file and properly refer to it upon inquiry by third persons about his employment history. We disagree.
 
 
 14
 On a reading of the entire settlement agreement, the Board's interpretation is inconsistent with other provisions of the agreement and thus incorrect. Although Section A calls for the removal of Wonderly for unsatisfactory performance, and for preparation of an SF-50, that section must be read in conjunction with Sections B and C of the agreement. Section B guarantees Wonderly a record with a "clean slate" following his removal, and Section C guarantees a supervisory appraisal with a "fully successful" rating. The Board's view that Section A permits the Agency to retain the SF-50 in Wonderly's file and to refer to the negative information in that document upon inquiry from third persons simply cannot be reconciled with the intent and spirit of the settlement agreement. When viewed as a whole, the settlement agreement requires that the agency purge all information regarding the appeal and the settlement, including the SF-50 that was part of the settlement, in order to provide Wonderly with a "clean slate."
 
 
 15
 Wonderly also contends that Section C of the settlement agreement required that the Navy provide him with a "fully successful" supervisory appraisal in conformity with customary administrative procedure. He explains that instead of executing this document and placing a copy in his personnel file, the Navy simply hand-delivered the original appraisal to him and considered its obligations under Section C as complete. Wonderly claims that this breached the intent of the agreement since the Navy failed to place a copy of the appraisal in his personnel file. He suggests that omitting the document from his personnel file not only brings the veracity of his personal copy into question but also prevents reference to the appraisal when the agency's personnel office responds to the inquiries of third persons for employment references. The Board disagreed. Citing the language of Section C, the Board found that, by simply giving Wonderly the original and only copy of the appraisal, the agency had adhered to the requirement that it "give to Appellant a recent supervisory appraisal." This interpretation is strained and crabbed. It is wholly inconsistent with the normal and generally expected administrative procedure where, as a matter of course, the agency places a copy of a performance appraisal in the employee's personnel file. Cf. Dodson v. United States Gov't, Dep't of Army, 988 F.2d 1199, 1206 (Fed.Cir.1993) ("Unexplained gaps in a personnel file are also highly prejudicial."). Moreover, providing Wonderly with his own personal copy of the supervisory appraisal without putting one in his personnel file does nothing to advance the stated intent of the settlement agreement to provide Wonderly with a "clean slate" and a personnel file purged of derogatory information.
 
 
 16
 For the foregoing reasons, we reverse the Board's decision and remand the case to the Board to fashion an appropriate remedy.
 
 
 17
 Costs to the petitioner.
 
 
 18
 RICH, Circuit Judge, concurs in result.